UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

IN RE:

James Bodmann  and Lucille Bodmann,

DEBTORS

-----------------------------------------------------X

Hearing Date: March 5, 2015

Hearing Time: 10:30 AM

CASE NO.: 13-74114-ast

Chapter: 7

JUDGE: ALAN S. TRUST

## NOTICE OF MOTION FOR ORDER
## GRANTING RELIEF FROM AUTOMATIC STAY

SIRS:

**PLEASE TAKE NOTICE** that Bayview Loan Servicing, LLC ("Movant") seeks relief from the automatic stay as to the property located at 6255 Kentfield Ave, New Port Richey, FL 34653, (the "Premises") and will move before the Honorable Alan S. Trust, United States Bankruptcy Judge in the United States Bankruptcy Court for the Eastern District of New York located at Long Island Federal Courthouse, 290 Federal Plaza, Central Islip, NY 11772, Courtroom 960 on March 5, 2015 at 10:00 AM, or as soon thereafter as counsel may be heard, for an Order:

1.  Pursuant to Bankruptcy Rule 4001, 11 U.S.C. 362(d)(1) and 11 U.S.C. 362(d)(2) granting Movant, its successors and/or assigns, relief from the Automatic Stay; and

2.  Granting Movant such other and further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief herein requested shall be in writing, shall state with particularity the grounds for the objection, shall be filed with the Clerk of the Bankruptcy Court and served upon, the undersigned counsel for the Movant seven (7) days prior to the return date of the within Motion.

Dated: February 11, 2015
      Plainview, New York

Respectfully submitted,

ROSICKI, ROSICKI & ASSOCIATES, P.C.
By: Andrew Goldberg, Esq.
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

To:
James Bodmann
Debtor
228 N Kings Avenue
North Massapequa, NY 11758

Lucille Bodmann
Debtor
228 N Kings Avenue
North Massapequa, NY 11758

R Kenneth Barnard
Trustee
3305 Jerusalem Avenue
Suite 215
Wantagh, NY 11793

Office of the United States Trustee
United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437

Leopold & Associates, PLLC
80 Business Park Drive, Suite 110
Armonk, NY 10504

Shapiro, Dicaro & Barak Esq.
105 Maxess Road, Suite N109
Melville, NY 11747

Shapiro, Dicaro & Barak LLC
250 Mile Crossing Boulevard
Suite One
Rochester, NY 14624

McCabe, Weisberg & Conway
Charles Higgs Esq.
145 Huguenot Street, Suite 210
New Rochelle, NY 10801

Frenkel, Lambert, Weiss, Weisman & Gordon LLP
53 Gibson Street
Bayshore, Ny 11706

Scott A. Sydelnik
28 East Main Street, Suite 1700
Rochester, NY 14614

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE:          CASE NO.: 13-74114-ast

James Bodmann  and Lucille Bodmann,  Chapter: 7

      DEBTORS  JUDGE: ALAN S. TRUST

--------------------------------------------------------X

### ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

On March 5, 2015the Motion (the "Motion") of Bayview Loan Servicing, LLC (the "Movant"), dated February 11, 2015 came before the Court, for relief from the automatic stay with respect to the collateral known as 6255 Kentfield Ave, New Port Richey, FL 34653 (the "Property"). This Court, having considered the evidence presented and the arguments of the parties, and with good cause appearing therefore, it is hereby

**ORDERED** that the automatic stay in effect pursuant to 11 U.S.C. Section 362(a), is hereby terminated pursuant to 11 U.S.C. § 362(d)(1) and 362 (d)(2) as to Movant, its agents, successors and/or assigns in interest, so that Movant, its agents, successors and/or assigns in interest, may take any and all action under applicable state law to exercise its remedies against the Property; and it is further

**ORDERED** that all other relief sought in the Motion is denied.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

James Bodmann and Lucille Bodmann

Debtors

## ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE:                                           CASE NO.: 13-74114-ast

James Bodmann and Lucille Bodmann,               Chapter: 7
                               DEBTORS           JUDGE: ALAN S. TRUST
--------------------------------------------------------X

## APPLICATION IN SUPPORT OF AN ORDER
## MODIFYING AND TERMINATING THE AUTOMATIC STAY

TO:   **THE HONORABLE ALAN S. TRUST**
      **UNITED STATES BANKRUPTCY JUDGE:**

The Application of Bayview Loan Servicing, LLC  ("Movant"), by its attorneys, Rosicki,

Rosicki & Associates, P.C., respectfully represents and says:

Andrew Goldberg, Esq., an attorney at law duly admitted to practice before this Court

and the Courts of the State of New York, hereby affirms the following to be true under penalty of

perjury:

### I.    RELIEF REQUESTED

1.  This is a contested matter brought pursuant to Federal Rules of Bankruptcy Procedure

Rules 4001, 9013 and 9014 and Sections 361, 362(d) of Title 11 of the United States Code (the

"Bankruptcy Code"), for an Order: (i) granting Movant, its successors and/or assigns, relief from

the automatic stay due to the failure of James Bodmann and Lucille Bodmann,  (the "Debtors")

to make payments, and/or offer and provide Movant with adequate protection for its security

interest in the property located at 6255 Kentfield Ave, New Port Richey, FL 34653 (the

"Premises"); 4001(a)(3); and (ii) granting Movant such other and further relief as is just and

proper.

### II.   BACKGROUND

2.  Movant is the holder, by assignment, of a Note and Mortgage, dated December 23,

2003, given by James J. Bodmann and Lucille Bodmann, (the "Debtors") in the original principal

amount of $59,200.00 pledging the Premises as security. Copies of the Note endorsed in blank, Mortgage and Assignments are annexed hereto as Exhibit "A".

    3. Based upon information provided by Movant, the original note is being held by Ronald R. Wolfe & Associates, P.L located at Post Office Box 25018 Tampa, Florida 33622-5018.

    4. On August 6, 2013, the Debtor filed with the Clerk of this Court a petition for relief under Chapter 7 of the Bankruptcy Code.

## III. THE APPLICATION

    5. As required by E.D.N.Y Administrative Order #533, the completed motion for relief Worksheet (the "Worksheet") is annexed hereto as Exhibit "B"

    6. Based upon information provided by Movant, the Debtors are in contractual default under the terms of the Note and Mortgage for failure to make timely payments in the amount of $766.79 for the March 1, 2008 through the March 1, 2011 payments, $700.65 for the April 1, 2011 through the May 1, 2014 payments, $434.21 for the June 1, 2014 through the August 1, 2014 payments, $567.88 for the September 1, 2014 through the December 1, 2014 payments, $565.35 for the January 1, 2015 through the February 1, 2015 payments, and the loan is contractually due for March 1, 2008.

    7. That by failing to make mortgage payments, the Debtors have failed to provide Movant with adequate protection for its security, entitling Movant, its successors and/or assigns, to relief from the automatic stay.

    8. Additionally, there is insufficient equity in the Premises.

    9. Movant's total lien on the Premises as of the date of the within application is approximately $111,364.18.

    10. According to a recent Broker Price Opinion ("BPO), the Premises is valued at $57,000.00. A copy of the BPO is attached hereto as Exhibit "C"

11. Based upon the above, no equity exists in this Premises and it is not necessary for the Premises to be maintained by the estate. Consequently, Movant is entitled to relief from the automatic stay so that it may proceed with the enforcement of its security interest in the Premises.

12. For the reasons stated above, the Debtors have failed to adequately protect the interest of Movant, causing Movant irreparable harm and injury.

13. Additionally, by seeking relief under Chapter 7, Debtors are not seeking to reorganize and thus, the Premises is not necessary for a successful reorganization. Therefore, relief from stay is warranted pursuant to Section 362(d)(2).

**IV.    CONCLUSION**

14. Relief from the stay is warranted under Section 362(d). Accordingly, the automatic stay must be modified to permit Movant to assert its rights in the Premises, including, but not limited to, the consummation of a foreclosure sale and eviction proceedings with respect to the Premises.

**WHEREFORE**, Movant respectfully requests that an Order be granted modifying the automatic stay as to it, its successors and/or assigns, permitting maintenance of a mortgage foreclosure action and eviction proceeding with respect to the Premises; and for such other and further relief as the Court may deem just and proper.

Dated: February 11, 2015
      Plainview, New York

Respectfully submitted,

_____
ROSICKI, ROSICKI & ASSOCIATES, P.C.
By: Andrew Goldberg, Esq.
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE:

James Bodmann and Lucille Bodmann

             Debtors

---

## NOTICE OF MOTION AND APPLICATION
## IN SUPPORT OF ENTRY OF AN ORDER VACATING STAY

---

### ROSICKI, ROSICKI & ASSOCIATES, P.C.
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

Exhibit "A"

 

# NOTE

Loan #: ███████

December 23rd, 2003        PALM HARBOR        FL
[Date]        [City]        [State]

6255 Kentfield Avenue, New Port Richey, FL 34653-1637
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S $ 59,200.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is SUNBELT LENDING SERVICES, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st    day of each month beginning on February 1st, 2004     I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on January 1st, 2034   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 300 S PARK PLACE BLVD, STE. 150, CLEARWATER, FL 33759
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S $     369.33

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

 -5N(FL) (0005)     Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3     Initials: JB

 

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3210 1/01
Initials _SB_ _RB_

 

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_James J. Bodmann_____ (Seal)
James J. Bodmann                    -Borrower

_Lucille Bodmann_____ (Seal)
Lucille Bodmann                     -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

-5N(FL) (0005)                Page 3 of 3                Form 3210 1/01

PAY TO THE ORDER OF
CHASE MANHATTAN MORTGAGE CORPORATION
WITHOUT RECOURSE
SUNBELT LENDING SERVICES, INC.

LISA DUNN
SHIPPING MANAGER

SUNBELT LENDING SERVICES, INC.
CORPORATE
SEAL
1902
FLORIDA
★

Pay to the Order of
Without Recourse
Chase Manhattan Mortgage Corporation

BY
REBECCA BROWN/ASST. SECRETARY

Return To:
SUNBELT LENDING SERVICES, INC.

300 S PARK PLACE BLVD. STE. 150
CLEARWATER, FL 33759
727-723-8884

This document was prepared by:
Patricia Connell
300 S PARK PLACE BLVD. STE. 150
CLEARWATER, FL 33759
727-723-8884



Rcpt: 746021    Rec: 91.50
DS: 207.20        IT: 118.40
01/08/04           Dpty Clerk

JED PITTMAN, PASCO COUNTY CLERK
01/08/04 01:03pm    1    of  20
OR BK **5686**    PG **1190**

─────────────[Space Above This Line For Recording Data]─────────────    59,200

# MORTGAGE

Return To: Sunbelt Title Agency
            2211 Lee Road, Suite 218
            Winter Park, FL 32789



i.d.
        136030118

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated        December 23rd, 2003        ,
together with all Riders to this document.
(B) "Borrower" is James J Bodmann, A Married Man and Lucille Bodmann, His
Wife

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   SUNBELT LENDING SERVICES, INC.

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010  1/01

  -6A(FL) (0005)

Page 1 of 16                    Initials: JB  LB

VMP MORTGAGE FORMS - (800)521-7291

Lender is a  Corporation
organized and existing under the laws of   The State of Florida
Lender's address is  300 S PARK PLACE BLVD. STE. 150, CLEARWATER, FL 33759

(E) "Note" means the promissory note signed by Borrower and dated    December 23rd, 2003 .
The Note states that Borrower owes Lender  Fifty Nine Thousand Two Hundred and
no/100. and no/100 -------                                              Dollars
(U.S. $     59,200.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   January 1st, 2034 .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0005)                          Page 2 of 16           Initials: JB-ƏD          Form 3010   1/01

OR BK **5686** PG **1192**
3 of 20

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the    County    [Type of Recording Jurisdiction] of            Pasco                                                 [Name of Recording Jurisdiction]:
Lot 94, HILLANDALE UNIT TWO, according to the Plat thereof recorded in Plat Book 11, Page(s) 108, of the Public Records of PASCO County, Florida.

Parcel ID Number:        0770 00000 0940                   which currently has the address of
                         6255 Kentfield Avenue                                         [Street]
        New Port Richey                            [City], Florida  34653-1637 [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

OR BK **5686** PG **1195**
6  of  20

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Initials: _JB JB_

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005)                                Page 7 of 16                    Initials: _JB_ _JB_                    Form 3010  1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

OR BK **5686** PG **1204**
15 of 20

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

1. *[signature]*
WITNESS
*[signature]*

_____ (Seal)
James J Bodmann                -Borrower

228 N Kings Avenue
North Massapequa, NY 11758 (Address)

2. *[signature]*
WITNESS
*[signature]*

_____ (Seal)
Lucille Bodmann               -Borrower

228 N Kings Avenue
North Massapequa, NY 11758 (Address)

*[signature: Sylvia Nord]*                        (Seal)
Sylvia Nord                       -Borrower

_____ (Seal)
                                  -Borrower

_____ (Address)                    _____ (Address)

*[signature: Sylvia Nord]*                        (Seal)
Sylvia Nord                       -Borrower

_____ (Seal)
                                  -Borrower

_____ (Address)                    _____ (Address)

_____ (Seal)                    _____ (Seal)
                                  -Borrower                                  -Borrower

_____ (Address)                    _____ (Address)

OR BK **5686** PG **1205**
16 of 20

NEW YORK

STATE OF ~~FLORIDA~~                ~~Pinellas~~                County ss:

The foregoing instrument was acknowledged before me this     December 23rd, 2003     by
James J Bodmann and Lucille Bodmann

who is personally known to me or who has produced   *NYS drivers License*  as identification.

_____
Notary Public

*SEAL!*

MARIA I. HERNANDEZ
Notary Public, State Of New York
No. 01HE6067170
Qualified In Suffolk County
Commission Expires December 3, *2005*

Initials: JB LB

-6A(FL) (0005)                    Page 16 of 16                    Form 3010   1/01

OR BK **5686** PG **1206**
17 of 20

# 1-4 FAMILY RIDER
## (Assignment of Rents)



THIS 1-4 FAMILY RIDER is made this    23rd        day of        December 2003        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to

SUNBELT LENDING SERVICES, INC.

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:

6255 Kentfield Avenue, New Port Richey, FL  34653-1637
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Initials: _JL_ _AB_
Page 1 of 4                                                      Form 3170 1/01
**(VMP)**-57R (0008)          VMP MORTGAGE FORMS - (800)521-7291

OR BK **5686** PG **1207**
18 of 20

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

OR BK **5686** PG **1208**
19 of 20

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _JB_ _&B_

VMP®-57R (0008)                    Page 3 of 4                    Form 3170 1/01

OR BK **5686** PG **1209**
20 of 20

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_James J. Bodmann_ _____ (Seal)    _Lucille Bodmann_ _____ (Seal)
James J Bodmann          -Borrower      Lucille Bodmann          -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower



Rcpt:1255158  Rec: 18.50
DS: 0.00        IT: 0.00
07/24/09 _____ Dpty Clerk

PAULA S. O'NEIL, PASCO CLERK & COMPTROLLER
07/24/09  02:27pm  1  of 2
OR BK **8134**  PG **531**

# ASSIGNMENT OF MORTGAGE

SPACE FOR RECORDING ONLY F.S.§695.26

FOR VALUE RECEIVED, on or before June 20, 2008, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR SUNBELT LENDING SERVICES, INC.,** ("Assignor") assigned, transferred and conveyed to: **CHASE HOME FINANCE LLC**, ("Assignee") whose address is 3415 Vision Drive, Department G-7, Columbus, OH 43219-6009, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated December 23, 2003 and recorded January 08, 2004 in Official Records Book 5686 at Page 1190 of the public records of PASCO County, Florida, encumbering the following-described real property:

> LOT 94, HILLANDALE UNIT TWO, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 11, PAGE(S) 108, OF THE PUBLIC RECORDS OF PASCO COUNTY, FLORIDA.

as the same may been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S):  JAMES J. BODMANN, and LUCILLE BODMANN

IN WITNESS WHEREOF, Assignor has executed and delivered this Instrument on
_____ July 10 _____, 2008.


MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INCORPORATED, AS NOMINEE FOR
SUNBELT LENDING SERVICES, INC.
By: _____
       Stacy E. Spohn
Typed Name: _____
Title: _____ VICE PRESIDENT

Attest: _____
                Cindy A. Smith
Typed Name: Assistant Secretary
Title: _____

(Affix Corporate Seal)

STATE OF _____OHIO_____

OR BK **8134** PG **532**
2    of 2

COUNTY OF _____ Franklin _____

BEFORE ME, the undersigned, personally appeared ____ Stacy E. Spohn _____
and _____ Cindy A. Smith _____ as __ **VICE PRESIDENT** __ and _____ Assistant Secretary _____
respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they
executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR SUNBELT**
**LENDING SERVICES, INC.** this _/0_ day of _July_____, 2008.

_Karen O. Belcher_
Notary Public:
My commission expires:



Recording requested by, prepared by and return to:
A Rosano
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018

KAREN O BELCHER
Notary Public, State of Ohio
My Commission Expires on October 30, 2010

Rcpt: 1599941   Rec:  18.50
DS:  0.00        IT:  0.00
05/01/14   eRecording

After recording please return to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

PAULA S. O'NEIL, Ph.D. PASCO CLERK & COMPTROLLER
05/01/14   02:26 PM   1 of   2
OR BK **9027** PG **542**

This document prepared by:
PEIRSONPATTERSON, LLP
WILLIAM H. PEIRSON
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Tax Parcel ID No.

----------------------[Space Above This Line For Recording Data]----------------------

# FLORIDA ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC**, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **Bayview Loan Servicing, LLC**, (herein "Assignee"), whose address is **4425 Ponce de Leon Blvd., Coral Gables, FL  33146**, a certain Mortgage dated **December 23, 2003** and recorded on **January 8, 2004**, made and executed by **JAMES J. BODMANN AND LUCILLE BODMANN** to and in favor of **SUNBELT LENDING SERVICES, INC.**, upon the following described property situated in **PASCO** County, State of Florida:
Property Address: **6255 KENTFIELD AVE, NEW PORT RICHEY, FL 34653**

**LOT 94, HILLANDALE UNIT TWO, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 11, PAGE(S) 108, OF THE PUBLIC RECORDS OF PASCO COUNTY, FLORIDA.**

such Mortgage having been given to secure payment of **Fifty Nine Thousand Two Hundred  and 00/100ths** (**$59,200.00**), which Mortgage is of record in Book, Volume or Liber No. **5686**, at Page 1190 (or as No. **2004003786**), in the Recorder's Office of **PASCO** County, State of Florida.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

OR BK **9027** PG **543**

2  of  2

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on ___April 3, 2014___.

Assignor:
**JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC**

By: _____
*LaKandra F. Williams*

Its: _____
**VICE PRESIDENT**

## ACKNOWLEDGMENT

State of **Louisiana** §
§
Parish of **Ouachita** §

On this ___3rd___ day of ___April, 2014___, before me appeared _LaKandra F. Williams_ to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the **VICE PRESIDENT**, of **JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC**, and that the seal affixed to said instrument is the corporate seal of said national association and that the instrument was signed and sealed on behalf of the national association by authority of its board of directors and that _LaKandra F. Williams_ acknowledged the instrument to be the free act and deed of the national association.

_____
Signature of Person Taking Acknowledgment

_Yolanda Diaz_
Name Type, Printed or Stamped

**NOTARY PUBLIC**
Title and Rank

Serial Number, if any: _N/A_

My Commission Expires: _Lifetime_

(Seal)

Florida Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2799

Exhibit "B"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
IN RE:                                                        Chapter 7
James Bodmann and Lucille Bodmann,                            Case# 13-74114
                                          Debtors.
-----------------------------------------------------------------x

## RELIEF FROM STAY - REAL ESTATE AND COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: 6255 Kentfield Ave, New Port Richey, FL 34653

2. LENDER NAME: Bayview Loan Servicing, LLC

3. MORTGAGE DATE: 12/23/2003

4. POST-PETITION PAYMENT ADDRESS:
M&T Bank
PO Box 62182
Baltimore, MD 21264

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $111,364.18 as of 1/28/2015
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $57,000.00

7. SOURCE OF ESTIMATED MARKET VALUE: BPO

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

| | |
|---|---|
| A. TOTAL: | $111,354.18 |
| B. PRINCIPAL: | $54,917.10 |
| C. INTEREST: | $24,503.00 |
| D. ESCROW (TAXES AND INSURANCE): | $22,640.38 |
| E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): | $2,250.00 |
| G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | $184.70 |

9. CONTRACTUAL INTEREST RATE: 6.3750%
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:_____.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: Litigation Fees: $500.00; Property Inspections: $336.00; Property Preservation: $765.00; Foreclosure Fees and Costs: $5,258.00
*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: No post-petition payments received

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: 18 PAYMENTS.

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 9/1/2013 | $700.65 | $0.00 | | | | |
| 10/1/2013 | $700.65 | $0.00 | | | | |
| 11/1/2013 | $700.65 | $0.00 | | | | |
| 12/1/2013 | $700.65 | $0.00 | | | | |
| 1/1/2014 | $700.65 | $0.00 | | | | |
| 2/1/2014 | $700.65 | $0.00 | | | | |
| 3/1/2014 | $700.65 | $0.00 | | | | |

| Date | Amount | Amount | | | | |
|---|---|---|---|---|---|---|
| 4/1/2014 | $700.65 | $0.00 | | | | |
| 5/1/2014 | $700.65 | $0.00 | | | | |
| 6/1/2014 | $434.21 | $0.00 | | | | |
| 7/1/2014 | $434.21 | $0.00 | | | | |
| 8/1/2014 | $434.21 | $0.00 | | | | |
| 9/1/2014 | $567.88 | $0.00 | | | | |
| 10/1/2014 | $567.88 | $0.00 | | | | |
| 11/1/2014 | $567.88 | $0.00 | | | | |
| 12/1/2014 | $567.88 | $0.00 | | | | |
| 1/1/2015 | $565.35 | $0.00 | | | | |
| 2/1/2015 | $565.35 | $0.00 | | | | |
| TOTALS | $11,010.70 | $0.00 | $ | $ | $ | $ |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:                                                        $926.00

    B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:    $750.00

    C. FILING FEE IN CONNECTION WITH THIS MOTION:       $176.00

    D. OTHER POST-PETITION ATTORNEYS' FEES:           $0.00

    E. POST-PETITION INSPECTION FEES:                $0.00

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES: $0.00

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:    $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:              $0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S
ACCOUNT AND NOT LISTED ABOVE: Litigation Fees: $500.00
    *(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH
    THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT ___A____.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT ___A__.)

(3)     COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED.  FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT ___A__.)

## DECLARATION AS TO BUSINESS RECORDS

I, _Nikki Tran_ , THE _Document Coordinator_ OF Bayview Loan Servicing, LLC, THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _Hurst_ <CITY/TOWN>, _TX_ <STATE> ON THIS _4th_ DAY OF _February_ <MONTH>, 20 _15_ <YEAR>.

_Nikki Tran_

NIKKI TRAN <NAME>
Document Coordinator <TITLE>
Bayview Loan Servicing, LLC
689 Aiport Freeway
Hurst, TX 76053

## DECLARATION

I, _Nikki Tran_ , THE _Document Coordinator_ OF Bayview Loan Servicing, LLC, THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT`S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Hurst_ <CITY/TOWN>, _TX_ <STATE> ON THIS _4th_ DAY OF _February_ <MONTH>, 20 _15_ <YEAR>.

_Nikki Tran_

NIKKI TRAN <NAME>
Document Coordinator <TITLE>
Bayview Loan Servicing, LLC
689 Aiport Freeway
Hurst, TX 76053

Exhibit "C"



**BROKER'S PRICE OPINION**

We make home possible ℠

|  |  |  |
|---|---|---|
| Exterior /Curb Side [X] | | Freddie Mac Loan # ▉▉ |
| Interior [ ] | Inspection Date 01/14/2015 | Servicer Loan ▉▉ |
| Interior Access Denied [ ] | Reason | BPO ▉▉ |

| BPO Firm Name | Broker | Phone |
|---|---|---|
| TRELLA REALTY | MICHAEL PEEPLES | (813) 949-3093 |

### SUBJECT PROPERTY DESCRIPTION

| Property Address 6255 KENTFIELD AVE | | | | Unit # |
|---|---|---|---|---|
| City NEW PORT RICHEY | County PASCO | State FL | Zip 34653 | |

| Is property currently listed for sale with a real estate firm? [ ] Yes [X] No | Name of Listing Broker, Salesperson or Firm | Phone |
|---|---|---|
| Property Type: Single Family | | Condo Fee $ 0 |

Occupant: [ ] Owner  [ ] Tenant  [X] Vacant

### Estimate of repairs needed for subject property

| Interior: | | Exterior: | |
|---|---|---|---|
| Painting | $ 0 | Painting | $ 0 |
| Structural | $ 0 | Structural | $ 0 |
| Appliances | $ 0 | Landscaping | $ 0 |
| Utilities | $ 0 | Roof | $ 0 |
| Carpet/Floors | $ 0 | Windows | $ 0 |
| Other | $ 0 | Other | $ 0 |
| Cleaning/Trash Removal | $ 0 | Do you recommend repairs? [ ] Yes [X] No | |

Repairs Total: $ 0.00

---

Overall Property Condition: [ ] Excellent [X] Good [ ] Fair [ ] Poor

Are there any items that require IMMEDIATE attention/action? [ ] Yes [X] No

Title/Legal Issues? [ ] Yes [X] No

Do any environmental issues affect the value of the property? [ ] Yes [X] No

If yes to any of the above, please explain:

THERE WERE NO VISIBLE MAJOR UPGRADES NOTICED THAT WAS NOT THERE AT ORIGINAL BUILD OF SUBJECT.

---

### NEIGHBORHOOD

Property Values: [X] Increasing [ ] Stable [ ] Declining    Predominant Occupancy [X] Owner [ ] Tenant

Marketing Time: [ ] Under 3 Mos. [X] 3-6 Mos. [ ] Over 6 Mos.    Vacancy Rate [X] 0-5% [ ] 5-10% [ ] 10-20% [ ] 20% + Mos.

No. of Active Listings in Neighborhood: 9    Price Range of Active Listings in Neighborhood $ 40000    to $ 80000

COMMENTS: SUBJECT IS LOCATED IN A CONFORMING SINGLE FAMILY HOME NEIGHBORHOOD WITH SIMILAR HOMES THROUGHOUT. NEIGHBORHOOD AND LOCAL MARKET HAS SEEN INCREASING PRICES OVER THE PAST YEAR DUE TO IMPROVING MARKET CONDITIONS.

---

### VALUE ESTIMATION

| | Probable Sale Price | 90-Day Marketing Time | 120-Day Marketing Time | 180-Day Marketing Time |
|---|---|---|---|---|
| As Is | | 57000 | 60000 | 63000 |
| As Repaired | | 57000 | 60000 | 63000 |

Property should be listed:  As Is: [X]    As Repaired: [ ]

Anticipated Seller-Paid Financing Costs: $ 0

COMMENTS: (Describe your marketing strategy and reasons for As Is/As Repaired recommendations)

THE MARKET PRICE OPINION AS OF TODAY IS $57000. THE TYPICAL MARKETING TIME IS 120 DAYS.

---

PREPARED BY /S/ MICHAEL PEEPLES

Signature                          Date 01/15/2015

THIS IS AN OPINION OF PRICE OR COMPARATIVE MARKET ANALYSIS AND IS NOT AN APPRAISAL. This opinion does not adhere to the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation. This opinion may have been developed in connection with a loss mitigation request made by you. If so, this opinion is being provided to you on behalf of your servicer and the Federal Home Loan Mortgage Corporation. Your servicer may have also used a different or additional property value or price to make a loss mitigation decision. If you have questions, please visit Freddie Mac's website at http://www.freddiemac.com/valuation.

## COMPETITIVE LISTINGS

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 6255 KENTFIELD AVE | 6216 EMERSON DR | 6350 EDENMORE AVE | 6410 TRALEE AVE |
| Proximity to Subject | | 1/4 Miles | 1/4 Miles | 1/2 Miles |
| Current List Price | $ | $ 45900 | $ 46640 | $ 69900 |
| Current List Date | | 10/16/2014 | 12/15/2014 | 01/06/2014 |
| Original List Price | $ | $ 45900 | $ 46640 | $ 69900 |
| Original List Date | | 10/06/2014 | 12/15/2014 | 01/06/2015 |

VALUE ADJUSTMENTS  (Use the following codes for the adjustments: S=Superior E=Equal I=Inferior U=Unknown)

| DESCRIPTION | DESCRIPTION | DESCRIPTION | ADJ | DESCRIPTION | ADJ | DESCRIPTION | ADJ |
|---|---|---|---|---|---|---|---|
| Above Grade Room Count | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 1.5 | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 2 | | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 2 | | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 2 | |
| Gross Living Area | Sq. Ft. 1097 | Sq. Ft. 1024 | Code | Sq. Ft. 1264 | Code | Sq. Ft. 1264 | Code |
| Location | GOOD | GOOD | E | GOOD | E | GOOD | E |
| Site/Lot Size | 0.12AC | 0.06AC | E | 0.12AC | E | 0.13AC | E |
| Design and Appeal | SINGLE FAMILY | SFD | E | SFD | E | SFD | E |
| Age (number of yrs. since house was built) | 42 | 31 | E | 42 | E | 41 | E |
| Overall Condition | Good | Good | E | Good | E | Good | E |
| Garage/Carport | 1 Attached | 1 Carport | I | 1 Attached | E | 1 Attached | E |
| Porch, Patio Deck, Pool, Fence | PATIO | PATIO | E | PATIO | E | PATIO | E |
| Overall Rating/Est.$ Value of Adjustments | | 1000 | I | -4000 | S | -4000 | S |

Indicate Property Most Comparable to Subject (Check One): ☐  ☐  ☒  ☐

COMMENTS: 1)THE PINES - VILLA - 2 BEDROOM, 2 BATH, SPLIT BEDROOM PLAN, EAT-IN KITCHEN, EXTENSIV2)BANK OWNED PROPERTY SOLD AS IS WITHOUT REPAIR OR WARRANTY, LISTING AGENT HAS NO K3)WONDERFUL HOME IN EXCELLENT CONDITION HAS REMODELED KITCHEN (2013) AND NEW ROOF IN

## CLOSED SALES

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 6255 KENTFIELD AVE | 6405 BANDURA AVE | 6422 LOMAND AVE | 6337 EMERSON DR |
| Proximity to Subject | | 1/4 Miles | 1/2 Miles | 1/4 Miles |
| Original List Price | $ | $ 57000 | $ 58500 | $ 64900 |
| List Price When Sold | $ | $ 57000 | $ 58500 | $ 64900 |
| Sales Price | $ | $ 57000 | $ 57250 | $ 63000 |
| Sales Date | | 07/18/2014 | 07/21/2014 | 08/29/2014 |
| Days on Market | | 17 | 123 | 144 |

VALUE ADJUSTMENTS  (Use the following codes for the adjustments: S=Superior E=Equal I=Inferior U=Unknown)

| DESCRIPTION | DESCRIPTION | DESCRIPTION | ADJ | DESCRIPTION | ADJ | DESCRIPTION | ADJ |
|---|---|---|---|---|---|---|---|
| Above Grade Room Count | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 1.5 | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 2 | | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 2 | | Total # of Rooms 4<br><br>Bdrm 2<br>Baths 2 | |
| Gross Living Area | Sq. Ft. 1097 | Sq. Ft. 1264 | Code | Sq. Ft. 1028 | Code | Sq. Ft. 1128 | Code |
| Sales or Financing Concessions | | NA | E | NA | E | NA | E |
| Location | GOOD | GOOD | E | GOOD | E | GOOD | E |
| Site/Lot Size | 0.12AC | 0.12AC | E | 0.12AC | E | 0.06AC | E |
| Landscaping | Good | Good | E | Good | E | Good | E |
| Design and Appeal | SINGLE FAMILY | SFD | E | SFD | E | SFD | E |
| Age (number of yrs. since house was built) | 42 | 41 | E | 37 | E | 30 | E |
| Overall Condition | Good | Good | E | Good | E | Good | E |
| Garage/Carport | 1 Attached | 1 Attached | E | 1 Attached | E | 1 Attached | E |
| Porch, Patio Deck, Pool, Fence | PATIO | PATIO | E | PATIO | E | PATIO | E |
| Overall Rating/Est.$ Value of Adjustments | | -2000 | S | 0 | E | -2000 | S |

Indicate Property Most Comparable to Subject (Check One): ☐  ☒  ☐

COMMENTS: 1)NOT A SHORT SALE, SUPER CLEAN 2 BEDROOM, 2 BATH HOME IN NEW PORT RICHEY, TRUE PRIDE2)UNBELIEVABLE PRICE FOR THIS MOVE IN READY HOME!! FROM THE TILED FRONT ENTRY TO THE3)MUST SEE THIS WELL MAINTAINED 2 BEDROOM, 2 BATHROOM, 1 CAR GARAGE VILLA IN A DESIRE

**BPOdirect Addendum**

BPOdirect Order #: ███████          Project Code: _____

FM Loan Number: ███████          SS Loan Number: ███████

Property Address: 6255 KENTFIELD AVE          , NEW PORT RICHEY          , FL

Comments:

HTTPS://WWW.EMORTGAGELOGIC.COM/PDOCS/GDJ3466261.HTML
SUBJECT IS A VACANT OLDER CONCRETE BLOCK SINGLE FAMILY HOME
THAT IS IN AVERAGE CONDITION FOR ITS AGE WITH NO VISIBLE MAJOR
REPAIRS NOTICED THAT WARRANTS ANY MAJOR CONCERNS OR
REPAIRS. SUBJECT APPEARS TO BE STRUCTUALLY SOUND AND
SECURED WITH NO VISIBLE MAJOR CONCERNS. SUBJECT IS LOCATED
IN A CONFORMING OLDER SINGLE FAMILY HOME NEIGHBORHOOD WITH
NO NEIGHBORHOOD AMENITIES, HOWEVER IT IS LOCATED NEAR
EVERYDAY AMENITIES AND MAJOR ROADWAYS. NEIGHBORHOOD HAS
SEEN INCREASING PRICES OVER THE PAST YEAR DUE TO INCREASING
PRICES OVER THE PAST YEAR. OTHER ADJUSTMENTS: CS1 SAME
MARKET AREA 0, CS2 SAME MARKET AREA 0, CS3 SAME MARKET AREA
0, CL1 SAME MARKET AREA 0, CL2 SAME MARKET AREA 0, CL3 SAME
MARKET AREA 0  EXACT
MILEAGE-SC1:0.2MI,SC2:0.42MI,SC3:0.08MI,LC1:0.09MI,LC2:0.11MI,LC3:0.27I
ADJ-SC1:-4000SQFT,2000DOM
ADJ-SC2
ADJ-SC3:-2000SQFT
ADJ-LC1:1000GAR
ADJ-LC2:-4000SQFT
ADJ-LC3:-4000SQFT

**Comments, cont:**

Comments, cont:

Orde████████FRONT_1.JPG



*Order* █████████ *ADDR_VERIFICATION_1.JPG*



*Order* █████████ *STREET_1.JPG*



Order ████ SIDE_1.JPG



*Order* ████████ *ACROSS_STREET_1.JPG*



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE:                             CASE NO.: 13-74114-ast

  James Bodmann and Lucille Bodmann     Chapter: 7

                    DEBTORS      **<u>AFFIDAVIT OF SERVICE</u>**

--------------------------------------------------------X

STATE OF NEW YORK    )
                       ) ss:
COUNTY OF NASSAU    )

      Alicia McNamee, being duly sworn, deposes and says:
      I am not a party to this action, am over 18 years of age and reside in Queens County, New
York.
      On February 13 2015, I served the within Notice of Motion, Motion for Modification
of the Automatic Stay on the following parties, by depositing a true copy thereof in a post-paid
wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service
within New York State, addressed to each of the following persons at the last known address set
forth after each name:

James Bodmann
228 N Kings Avenue
North Massapequa, NY 11758

Lucille Bodmann
228 N Kings Avenue
North Massapequa, NY 11758

R Kenneth Barnard
3305 Jerusalem Avenue
Suite 215
Wantagh, NY 11793

Office of the United States Trustee
United States Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437

Leopold & Associates, PLLC
80 Business Park Drive, Suite 110
Armonk, NY 10504

Shapiro, Dicaro & Barak Esq.
105 Maxess Road, Suite N109
Melville, NY 11747

Shapiro, Dicaro & Barak LLC
250 Mile Crossing Boulevard
Suite One
Rochester, NY 14624

McCabe, Weisberg & Conway
Charles Higgs Esq.
145 Huguenot Street, Suite 210
New Rochelle, NY 10801

Frenkel, Lambert, Weiss, Weisman & Gordon LLP
53 Gibson Street
Bayshore, Ny 11706

Scott A. Sydelnik
28 East Main Street, Suite 1700
Rochester, NY 14614

_____  *Alicia M McNamee*
                          Alicia McNamee

Sworn to before me this
13 day of February 2015

_____
NOTARY PUBLIC

Betsy P. Tarr
Notary Public, State of New York
No. 01TA6080080
Qualified in Nassau County 2017
Term Expires December 8, _____

**NOTICE OF MOTION COVER SHEET**

NAME OF DEBTOR                          CASE NUMBER
James Bodmann  and Lucille Bodmann      13-74114-ast


PLAINTIFF/MOVANT                        DEFENDANT/RESPONDENT
Bayview Loan Servicing, LLC

ATTORNEYS                               ATTORNEYS IF KNOWN
Rosicki, Rosicki & Associates, P.C.
51 East Bethpage Road
Plainview, NY 11803

PRINT NAME OF ATTORNEY                  SIGNATURE
Andrew Goldberg, Esq.   
                                        _____

NATURE OF SUIT
(Check all Boxes That Apply to This Motion)

___X___     To Grant Relief from the Automatic Stay
            11 U.S.C. Section of 362(d)  ($176.00 fee required)

_____  To Withdraw the Reference of a Case
            11 U.S.C. Section 157(d)    ($75.00 fee required)

_____  To Compel Abandonment of Property
            of the Estate - B.R. 6007 (b) ($75.00 fee required)

_____  To Convert (fee not required)

_____  To Dismiss (fee not required)

_____  To Assume/Reject (fee not required)

_____  To Extend Time to Object to Discharge/Dischargeability

_____  To Extend Exclusivity Period to File Plan, Etc.

_____  Objections to Claims

_____  For Summary Judgment

_____  Other- Specify Type of Motion _____

FILING FEE (Check One) _____ Fee Attached __X___ Fee Paid Online

# *ROSICKI, ROSICKI & ASSOCIATES, P.C.*

### *ATTORNEYS AT LAW*

## *Main Office: 51 East Bethpage Road*

## *Plainview, New York 11803*

### *Telephone (516) 741-2585*

### *Facsimile (516) 873-7243*

*We are a debt collector and are attempting to collect a debt.*

*Any information obtained may be used for that purpose.*

February 13, 2015

United States Bankruptcy Court
Eastern District of New York
Long Island Federal Courthouse
290 Federal Plaza, PO Box 9013
Central Islip, NY 11722

      **Re:**    **Debtor:  James Bodmann and Lucille Bodmann**
              **Bankruptcy Case No.: 13-74114-ast**
              **Chapter 7**

Dear Sir or Madam:

Enclosed herewith please find one Chambers Copy of a Notice of Motion and Motion for Modification of the Automatic Stay. The appropriate filing fee in the amount of $176.00 has been paid online.

Please file this motion with the Court as it is scheduled for hearing on March 5, 2015 at 10:30 AM.

Your assistance is greatly appreciated.

Very truly yours,

ROSICKI, ROSICKI & ASSOCIATES, P.C.

Alicia McNamee
Paralegal

Enclosures